UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY GARRETT and<br>DEBORAH GARRETT,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY,<br><br>    Defendant. | CASE NO. 1:12-CV-82-TLS |

**OPINION AND ORDER**

This is an action for Underinsured Motor Vehicle (UIM) coverage benefits under a policy of insurance that Defendant State Farm Mutual Automobile Insurance Company issued to the Plaintiffs, Timothy and Deborah Garrett. The Plaintiffs also allege that the Defendants engaged in bad faith in the handling of the UIM claim. The Defendant is moving for the entry of summary judgment as to the Plaintiffs' claim of bad faith and their request for punitive damages. (Def.'s Mot. for Partial Summ. J., ECF No. 29.) The Plaintiffs have filed a Response in Opposition to Defendants' Motion for Partial Summary Judgment [ECF No. 35], and the Defendant filed a Reply [ECF No. 36].

**STATEMENT OF FACTS**

The Plaintiffs are insured under a policy of automobile insurance (the Policy) issued by the Defendant. The Policy includes UIM coverage with a bodily injury limit of $100,000. The Policy includes Medical Payments coverage with a limit of $5,000. With respect to UIM coverage, the Defendant agrees to "pay only if the full amount of all available limits of all bodily

injury liability bonds, policies, and self-insurance plans that apply to the insured's bodily injury have been used up by payment of judgments or settlements, or have been offered to the insured in writing." (Policy at 14, ECF No. 31 (emphasis omitted).)

On May 1, 2009, Plaintiff Timothy Garrett was involved in a motor vehicle accident. He was struck by a vehicle driven by Jalisa Hutchinson, who ran a red light. The Defendant received a report of the accident on the same day that it occurred. The Defendant's claims representatives immediately began having contact with the Plaintiffs regarding medical bills. On May 8, Hutchinson's insurance carrier, Farm Bureau Insurance, called the Defendant to advise that it had accepted liability and paid for the property damage to the Plaintiffs' vehicle. Hutchinson's Farm Bureau Insurance policy had a coverage limit of $50,000.

On May 21, 2009, a claim representative for the Defendant reviewed the Plaintiffs' file, which included payment of an Emergency Medical Service Bill of $2,453.18, and noted that hospital bills already received by the Defendant would exhaust the Medical Payment limit. She offered to Mr. Garrett that the Defendant pay him the remaining balance of the Medical Payment limit to put toward his medical bills. Mr. Garrett advised that he was hiring an attorney and would call the Defendant back. The next day, a claim processor for the Defendant noted that Medical Payment coverage benefits had been exhausted. She had received a request from Mr. Garrett that the Defendant pay the remainder of the Medical Payment limit to him, and thus processed the partial payment for Mr. Garrett's Bluffton Regional Hospital Medical bill to be paid directly to him.

On August 11, 2009, Mr. Garrett informed the Defendant that he had retained an attorney.

On September 8, 2009, the Defendant called Farm Bureau to determine the status of payment for Mr. Garrett's medical bills that exceeded the $5,000 Medical Payment limit. Farm Bureau advised that Mr. Garrett's bodily injury claim was still pending and that it was waiting on a demand from Mr. Garrett's attorney.

On April 8, 2010, a claim representative for the Defendant called Mr. Garrett's attorney's office and spoke with someone who indicated that the attorney representing Mr. Garrett was out until April 12, 2010. The claim representative left a message for the attorney inquiring about a letter of representation, which State Farm had still not received, as well as the status of settlement between the Garretts and Indiana Farm Bureau.

On July 1, 2010, the claim representative again called the Garretts' attorney's office. The office was closed when the call was made, so he sent a letter to the attorney's office with a request for a letter of representation. Over five months later, on December 9, 2010, the Defendant received a letter from the Garretts' attorney indicating that he was representing them with respect to Mr. Garrett's UIM claim. On December 20, 2010, a claim representative spoke with the Garretts' attorney who advised that Indiana Farm Bureau's limits were $50,000. On January 21, 2011, the Garretts' attorney indicated that he would forward a $50,000 limits offer that he had received from Farm Bureau to settle Mr. Garrett's bodily injury claim against Ms. Hutchinson. On January 27, 2011, the Defendant received a copy of Farm Bureau Insurance's limits offer of $50,000. On February 16, 2011, a claim representative suggested that permission be granted to the attorney for the Garretts to settle with Farm Bureau. On the same day, Team Manager Tony Bradley advised the claim representative to grant permission to the Garretts' attorney to accept Farm Bureau's limits offer and waive the Medical Payment subrogation

interest. The Defendant faxed and mailed a letter to the Garretts' attorney granting them permission to accept Farm Bureau's $50,000 limits offer.

In October 2011, the Defendant's claim representative completed a bodily injury evaluation for Mr. Garrett. The evaluation indicated that Mr. Garrett sustained an injury to his left shoulder, that a CT scan showed that he had a left clavicle midshaft fracture with no significant deformity and minimally displaced fractures at his left second to the fifth ribs. His cervical spine x-rays were negative. He was prescribed vicodin and advised to apply ice to the affected area and to keep his left arm in a sling. The evaluation noted that Mr. Garrett received follow-up care on May 11, 2009. Mr. Garrett indicated that he was in a fair amount of pain, but was more comfortable than during the previous week. He had mild tenderness over his clavicle and very minimal thoracic pain. He was fitted with a clavicular strap.

Eleven days later, Mr. Garrett indicated during a follow-up appointment that he had soreness in his clavicle and shoulder blade. Mr. Garrett was again seen for his clavicle injury on June 12, 2009, where he indicated that he had pain in his upper arm, chest, and ribs. He had mild tenderness at the site of the fracture, and Dr. David Wittbrodt indicated that he was not seeing much new bone formation yet. Mr. Garrett was advised to continue wearing the sling and to remain off work. On August 3, Mr. Garrett was seen again for his clavicle injury, indicating that his clavicle remained tender and that he had restricted external rotation. Dr. Wittbrodt noted that Mr. Garrett had a comminuted fracture which showed some early healing, but which had not progressed very much. An MRI of Mr. Garrett's left shoulder showed mild degenerative changes. An August 13, CT scan of Mr. Garrett's upper extremities showed a comminuted left clavicle fracture with a small amount of bony bridging along the

4

original fracture site. On August 14, Dr. Wittbrodt cleared Mr. Garrett to return to work. On September 10, Mr. Garrett again saw Dr. Wittbrodt, who noted that while Mr. Garrett was not completely healed, he was making progress. Then, on September 23, Mr. Garrett told Dr. Wittbrodt that he wanted to go back to work. On October 9, Dr. Wittbrodt cleared Mr. Garrett, who indicated he was doing better, to go back to regular duty work. On January 7, 2010, Mr. Garrett was discharged from physical therapy with no limitation. Another CT scan, taken on May 18, verified that Mr. Garrett's left clavicle fracture had not resulted in a non-union.

The evaluation showed that Mr. Garrett was claiming $23,207.61 in medical expenses, that after considering write-offs for the amounts State Farm paid to Mr. Garrett under the Medical Payment coverage, his medical expenses totaled $12,499.23. According to the evaluation, State Farm received documents from Mr. Garrett's employer identifying wage loss of $10,374. Mr. Garrett also claimed lost wage of $593.60 due to his inability to umpire baseball games. Mrs. Garrett claimed wage losses of $354.72 while caring for Mr. Garrett.

Finally, the claim representative's notes indicated that there was no partial permanent impairment rating assigned to Mr. Garrett, that all of his fractures appeared to healed, and that he had already received $50,000 from Indiana Farm Bureau. The claim representative requested up to $30,000 in settlement authority–based on the $24,023.07 in special damages considered by the Defendant and the $50,000 already received.

In response to the claim representative's request for $30,000 in settlement authority, Team Manager Bradley sent a message indicating that, because Mr. Garrett's fractures appeared to have healed without issue, he disagreed with the claim representative's conclusion, and authorized up to $15,000 to resolve the UIM claim. On October 13, 2011, the Defendant sent the

Garretts' attorney an initial offer of $5,000. On November 23, the Defendant received a letter from the Garretts' attorney indicating that unless the offer was increased, he would file suit.

On December 14, the claim representative spoke with the Garretts' attorney, who indicated that they would not settle the UIM claim for less than $30,000. The claim representative responded that $15,000 was the Defendant's highest offer. The Garretts' attorney indicated that he would be filing a lawsuit. On December 22, the claim representative advanced the Garretts the Defendant's original offer of $5,000 under the UIM coverage, and on February 10, 2012, the Plaintiffs initiated this litigation.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to "establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted. A bare contention that an issue of fact exists is insufficient to create a factual dispute, but the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that

"summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598–99 (7th Cir. 2000). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

**B.     The Tort of Bad Faith**

A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). While there is no exhaustive or exclusive list of bad faith actions that an insurer can take, the obligation of good faith and fair dealing "includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 976 (Ind. 2005) (quoting *Hickman*, 622 N.E.2d at 519). For example, an insurer that denies liability "knowing that there is no rational, principled basis for doing so has breached its duty." *Hickman*, 622 N.E.2d at 520; *see also Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) (holding that to prove bad faith in the denial of an insurance claim, "the plaintiff must establish . . . that the insurer had knowledge that there was no legitimate basis for denying liability"); *Monroe Guar.*, 829 N.E.2d at 976 (holding that in cases

7

where bad faith is alleged due to denial of coverage, a plaintiff must establish that insurer had knowledge that there was no legitimate basis to deny liability); *Allstate Ins. Co. v. Clancy*, 936 N.E.2d 272, 278 (Ind. Ct. App. 2010) (stating that an insurer that denies liability knowing that there is no rational, principled basis for doing so has breached its duty of good faith). "As a general proposition, '[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Monroe Guar.*, 829 N.E.2d at 977 (citing *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998)).

A good faith dispute about the amount of a valid claim or about whether the insured has a valid claim does not supply the grounds for a bad faith claim. *Hickman*, 622 N.E.2d at 520; *see also Monroe Guar.*, 829 N.E.2d at 976. "This is so even if it is ultimately determined that the insurer breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Hickman*, 622 N.E.2d at 520.

As these rulings highlight, a successful bad faith claim is composed of an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as the knowledge of the lack of a reasonable basis to deny a claim). To be successful at trial, the Plaintiff would have to establish by a preponderance of the evidence that there was no reasonable basis to support the Defendant's valuation of his claim, and that the Defendant was aware that there was no such basis. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that whether there is a genuine issue for trial depends on whether there is sufficient evidence for a jury to return a verdict for that party applying the substantive evidentiary standard of proof that would apply at a trial on the merits); *Knight v. Wiseman*, 590

F.3d 458, 464 (7th Cir. 2009) ("[T]he evidence submitted in support of the nonmovant's position must be sufficiently strong that a jury could reasonably find for the nonmovant.")

As evidence of the Defendant's bad faith, the Plaintiffs note that the Defendant's claims representative valued Mr. Garrett's claim at $30,000, but the Defendant only authorized an offer of $15,000, and then actually offered $5,000. The Plaintiffs assert that the Defendant did not increase its offer to $15,000 until after the Plaintiffs threatened to file a lawsuit, and did not actually advance the $5,000 originally offered until the Plaintiffs' attorney indicated that a lawsuit was forthcoming.

The Defendant argues that its evaluation of the UIM claim was objectively reasonable. They assert that Mr. Garrett's most significant injury, a mid-shaft fracture to his clavicle, did not result in permanent injury, which was entirely consistent with Team Manager Bradley's note to the claim representative who requested the settlement authority. The Defendant asserts:

> CR Miller's evaluation of October 11, 2011, and State Farm subsequent offers to resolve the UIM claim reflect a careful consideration of the medical records that had been collected by State Farm or submitted by the Garrett's counsel. State Farm waived its $5,000 MP subrogation interest, and offered $15,000 under the UIM coverage. This amount, coupled with Indiana Farm Bureau's payment of $50,000, would have led to a total recovery of $70,000 by Mr. Garrett. Mr. Garrett, however, demanded $30,000 under the UIM coverage, which was $20,000 less than the UIM limit. Mr. Garrett's demand for $30,000, if accepted, would have led to a total recovery of $85,000. Thus, the amount in dispute prior to the filing of suit was $15,000. The fact that State Farm and the Plaintiffs disagreed about the value of Mr. Garrett's bodily injury claim does not support a finding of bad faith under Indiana law, and the fact that the difference of opinion regarding the value of Mr. Garrett's bodily injury claim was a mere $15,000 shows that State Farm's evaluation of the claim was objectively reasonable.

(Br. in Supp. of Def.'s Mot. for Partial Summ. J. 13, ECF No. 30.) Additionally, the Defendant urges that, even if it could be said that its evaluation or its offer was objectively unreasonable, there is no evidence that it had knowledge that there was no legitimate basis for its position or

9

that it intentionally undervalued Mr. Garrett's UIM claim.

The entirety of the Plaintiffs' bad faith claim regarding the amount of payment can be summarized by their assertion that the Defendant "clearly and continuously valued this [UIM] claim at one amount, but then only offered and negotiated the claim based on a much lower amount when dealing with the Plaintiffs." (Resp. in Opp'n 5–6, ECF No. 35.) This, however, is not an accurate characterization of the record, which indicates that Team Manager Bradley immediately, upon review of the record, valued the claim at no more than $15,000 on the basis that Mr. Garrett's fracture had healed without issue. The Plaintiffs present no evidence to indicate that this assessment of Mr. Garrett's injury and valuation was not objectively reasonable. The only evidence they offer in support of valuation is the claim representative's initial valuation and corresponding request, without indicating why his valuation was more accurate than his supervisor's. Mr. Garrett had actual expenses of $24,023.07, and had already received $50,000 from Indiana Farm Bureau. In addition, the Defendant had already waived its right of reimbursement with respect to the $5,000 paid under the Medical Payment coverage. Thus, a UIM payment of $15,000 would have yielded a recovery of $70,000. The only disagreement between the parties regarding the Plaintiffs' recovery was the value of Mr. Garrett's bodily injury claim. And while the Plaintiffs take issue with the Defendant's failure to offer the full $15,000 that was authorized, they cite no statute or case that imposes a duty on the insurance company to offer the maximum amount of the bodily injury valuation. In reality, a range of value is often appropriate. *See Johnston v. State Farm Mut. Auto. Ins. Co.*, 667 N.E.2d 802, 806 (Ind. Ct. App. 1996) (noting that insurance contract claims that are more technically claims for personal injuries including pain and suffering which "may not be reduced to fixed

rules and mathematical precision"). The Plaintiffs, for their part, designate no evidence regarding the value of the Plaintiff's personal injuries or to dispute the Defendant's position that Mr. Garrett suffered no long term injuries or permanent impairment. The Plaintiffs have not presented any evidence from which a jury could conclude that the Defendants had no rational, principled basis for offering $5,000 in settlement of the UIM claim. Additionally, the Defendant offered the full amount of its valuation seven days after receiving the Plaintiffs' response rejecting its initial offer.

The Court concludes that the Plaintiff's designated evidence would not convince a jury that the Defendant had no objective reasonable basis to offer $5,000 in settlement of Mr. Garrett's UIM claim, or that the Defendant was aware that it had no reasonable basis to dispute his claim. Rather, the undisputed facts demonstrate that the Defendant had a rational, principled basis for evaluating Mr. Garrett's claim and compensating him for the injuries that were attributable to the accident. The Defendant's disagreement with the Plaintiffs concerning the value of Mr. Garrett's claim does not create a genuine issue of material fact on each element of a bad faith claim upon which the Plaintiffs would bear the burden at trial.

The Defendant maintains that it is also entitled to summary judgment on the Plaintiffs' claim that it breached the duty of good faith owed to the Plaintiffs by causing undue delay in the offer to resolve the UIM claim. The Defendant notes, first, that the obligation to pay UIM benefits was only triggered when Indiana Farm Bureau extended a written offer to Mr. Garrett to pay Hutchinson's liability limit of $50,000. The Defendant did not receive a copy of the offer until January 27, 2011, nearly twenty-one months after the accident. Mr. Garrett's initial demand regarding the UIM claim was not received until July 18, 2011. It was not until September 6,

11

2011, that Mr. Garrett's employer sent written confirmation of the days that Mr. Garrett missed work due to his injuries. Based on the evaluation of Mr. Garrett's UIM claim completed on October 12, the Defendant made its first offer on October 13, which it notes was only thirty-seven days after all the information necessary to evaluation the claim has been sent to the Defendant. The Plaintiffs do not present any evidence in genuine dispute of these facts, and in fact, devote no portion of their Response in Opposition to the issue of undue delay.

### C. Punitive Damages

The Plaintiff maintains that punitive damages are recoverable on his bad faith claim. In Indiana, punitive damages are available only

> if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future." *Bud Wolf Chevrolet, Inc. v. Robertson*, [519 N.E.2d 135, 137–38 (Ind. 1988).]

*Hickman*, 622 N.E.2d at 520. Proof that a tort was committed is not sufficient to establish the right to punitive damages. *Id.* The facts of this case, as outlined above, do not evince a conscious wrongdoing or egregious action that would allow a reasonable factfinder to award punitive damages. Rather, the evidence is that, regardless of whether its decision was correct, the Defendant's valuation of the bodily injury claim was made in good faith and upon a rational basis. Accordingly, the Defendant is entitled to judgment as a matter of law on the Plaintiff's claim for punitive damages.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Defendant's Motion for Partial Summary Judgment [ECF No. 29]. The Complaint remains pending on the Plaintiffs' breach of contract claim. The parties are DIRECTED by October 21, 2013, to file a joint status report indicating their availability for trial and any other matters that the parties believe are pertinent to the management of this case to final resolution.

SO ORDERED on September 20, 2013.

                                                s/ Theresa L. Springmann
                                               THERESA L. SPRINGMANN
                                               UNITED STATES DISTRICT COURT